Case 1:05-cv-01367-WDQ   Document 1   Filed 05/18/05   Page 1 of 9

FILED         ENTERED
LOGGED _____ RECEIVED

MAY 1 8 2005

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF MARYLAND

| | |
|---|---|
| BARBARA ANN KEGLEY<br>120 NORTH MAIN STREET<br>BOONSBORO, MD 21713-1038<br>　　Plaintiff | |
| v. | Case No: WDQ 05 CV 1367 |
| PHOENIX MECANO, INC<br>7330 EXECUTIVE WAY<br>FREDERICK, MARYLAND 21704-8377<br>　　Defendant<br>and | |
| RICHARD RAMSEY, INDIVIDUALLY<br>4133 EVERETT STREET<br>BETHESDA, MARYLAND 20895<br>　　Defendant | |

## COMPLAINT

Plaintiff, through undersigned Counsel hereby states that the Defendant(s) caused her Considerable legal harm and anguish by their actions as her employer and states the following as support therefore

1　　Plaintiff was hired by Defendant, Phoenix-Mecano, on March 19, 1990 as a Marketing Assistant

2.　　On or about 1996 she was promoted to Human Resource Administrator

3.　　On or about June of 1999, she was promoted to Human Resource Manager

4.　　Her immediate Supervisor was Richard Ramsey who was the president of Phoenix-Mecano

5.　　Richard Ramsey was also the CEO for PMI Management Group and on the Board of Directors for PMI

6. Defendant Richard Ramsey consistently requested the Plaintiff to work late with him, alone in the office.

7. Throughout her employment, Plaintiff literally walked a tightrope trying to maintain a "good relationship" with the Defendant and still have her own private relationships.

8. Defendant regularly invited the Plaintiff to join him for drinks after they completed work and paid for all the cocktails and food

9. Defendant questioned Plaintiff about her romantic relationships and incessantly prodded her into breaking off other relationships and joining him

10. If plaintiff received a phone call from her boyfriend at the end of the day, Defendant would interrogate her about the call and make it very difficult for her to talk.

Defendant Richard Ramsey often attempted to interfere with the Plaintiff's relationships and did things to disturb those relationships

12. On or about December 5, 2002, Plaintiff was leaving the offices after five but before her usual late time and stopped b the office of Mr. Ramsey to let him know she was leaving and remind him to lock the doors.

13. Defendant Ramsey was disappointed that she was leaving and questioned her as to why and if she had a date. Plaintiff said "no" but she was happy to tell him that she had a new boyfriend.

14. From that night until she was discharged, Mr. Ramsey refused to talk to the Plaintiff, give her information about the work that she needed to perform, suddenly reduced her duties and finally had his secretary tell her to look for a new job. He

intentionally and knowingly discriminated against her because she would not have a relationship with him.

15. Just prior to the evening of December 5, 2003, Plaintiff had been given additional duties such as administering company-wide benefits, because of her knowledge and skill in the computer software program.

16. Plaintiff was known to be an integral part of the defendant's management team.

17. Prior to that evening the entire office considered Ms Kegley and Mr. Ramsey to be involved in an affair, partly because of the extensive time they spent together, during the day and after work hours.

18. While working at Phoenix-Mecano, Ms Kegley requested several times to be given various courses to help her in her work as a Human Resources Officer.

19. Mr. Ramsey refused her these courses saying that she is doing all she could do and working as well as possible and therefore the courses were unnecessary. As a result, she never completed her college degree nor did she have the opportunity to tale courses in her field to allow herself to be more marketable.

20. The Plaintiff was receiving four paid weeks of vacation plus personal leave, dental benefits, Health Insurance, Life Insurance and a Retirement 401K as well as about $53000/year when she was constructively fired from her job.

21. Plaintiff has suffered from lack of sleep, depression, loss of self esteem, stomach pain and severe head aches as a result of the Defendant's actions against her.

22. Plaintiff properly and timely filed charges under the MCHR AND EEOC thus conforming with her duty to avail herself of all administrative remedies

## COUNT: I CONSTRUCTIVE DISCHARGE

23. Defendants constructively discharged the plaintiff after she made it clear to her Supervisor, Richard Ramsey, that she would not have an intimate relationship with him.

24. Her supervisor gradually took away her duties and forced her to train others in her duties.

25. Defendant Ramsey barred the Plaintiff from meetings which she would ordinarily have been invited to in order to further the ability to do her job.

26. Defendant Ramsey refused to answer the Plaintiffs questions about the tasks she was supposed to perform.

27. Defendant Ramsey, after being the Plaintiff's best friend at the office, ignored her and refused all contact with her.

28. One day after about five months passed and Plaintiff was basically isolated at her job, the defendant Ramsey's secretary mentioned to the Plaintiff that it might be a good idea if she updated her resume and started looking for a new job. She did not say whether this was what her boss had told her

29. Plaintiff asked another associate whether she was going to be fired and after talking to the defendant Ramsey, learned that she would be fired if she did not quit.

30. She asked the associate to find out if she would be getting some sort of severance if she quit. He found that the defendant Ramsey agreed to give her several weeks of severance provided she quit within the week. There was insufficient notice and no opportunity to secure alternate employment.

31   Realizing that she was about to be fired after training others to take her place, she thought she had better agree to quit and at least get some money to bide her over until she was able to secure new employment.

32   She was constructively discharged on or about the beginning of July 2003

## COUNT II: EMPLOYMENT DISCRIMINATION BY THE EMPLOYER , PHOENIX MECANO, BASED ON GENDER AND RETALIATION UNDER THE TITLE VII OF THE CIVIL RIGHTS ACT: QUID PRO QUO

33.   Plaintiff was treated in a discriminatory manner due to her gender in conflict with the Title VII of the Civil Rights Act

34.   The Employer, defendant PMI and Phoenix-Mecano discriminated against the Plaintiff by constructively terminating her employment when she refused to have a personal and sexual relationship with the defendant Richard Ramsey.

35   Plaintiff was constructively terminated on the orders of Richard Ramsey on or about the beginning of July 2003

36.   Plaintiff was subject to unwelcome advances

37   When the plaintiff rejected the Defendant, Richard Ramsey, the employer retaliated against her by reducing her position, omitting her from important conferences, failing to communicate to her and finally having others inform her that she would be terminated if she did not quit

38.   The defendant, Ramsey was an officer of the employer, and the employer Therefore, had knowledge of the discriminatory behavior.

39.   The Defendant employer allowed the harassment and retaliation against other female employees who rejected a relationship sought by the defendant Ramsey.

40   Those employees with whom the defendant Ramsey did not look t0 for a relationship were not treated in the same manner as the Plaintiff.

Other employees, not in the same class as the Plaintiff, who were working as the employer should have expected, were treated well and not discharged.

Other employees not in the same class as the Plaintiff who were working as the employer should have expected but who were marked for lay offs, were given advance notice by the President and treated in a positive manner.

43   As a result of the Defendant employer's behavior, Plaintiff has suffered severe emotional, mental and economic damages.

### COUNT III: DISCRIMINATION AND HARRASMENT/QUID QUO PRO BY AN OFFICER OF PHOENIX-MECANO, RICHARD RAMSEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS PROHBITED UNDER THE TITLE VII OF HE CIVIL RIGHTS ACT

44   The Plaintiff was discriminated against by the defendant Richard Ramsey after she rebuffed him by telling him that she had a new boyfriend , thus letting him know that she was not interested in dating him.

45.   The Defendant reacted with hurt and anger and informed Plaintiff that if she did not quit, she would be discharged. This occurred after she had served for more than twelve years of employment with the Phoenix-Mecano as a valued and trusted employee.

46.   The Defendant, Ramsey, harassed and retaliated against other female employees who rejected him and with whom he sought a relationship.

47   Those employees with whom the defendant Ramsey did not look at for a relationship were not treated in the same manner as the Plaintiff.

48   As a result of the Defendant, Richard Ramsey's intentional and cruel behavior, Plaintiff has suffered severe emotional, mental and economic damages.

## SEXUAL HARASSMENT/QUID QUO PRO IN VIOLATION OF THE MARYLAND HUMAN RELATIONS ACT
## COUNT IV: BY PHOENIX-MECANO

49. Plaintiff was treated in a discriminatory manner due to her gender in conflict with the Maryland Human Relations Act.

50. The Employer, defendant PMI and Phoenix-Mecano discriminated against the Plaintiff by constructively terminating her employment when she refused to have a personal and sexual relationship with the defendant Richard Ramsey.

51. Plaintiff was consructively terminated on the orders of Richard Ramsey in the beginning of July 2003

52. Plaintiff was subject to unwelcome advances

53 When the plaintiff rejected the Defendant, Richard Ramsey, the employer retaliated against her by reducing the supervisory aspect of her position, omitting her from important conferences, failing to communicate to her and finally informing her that she would terminated if she did not quit.

54. The defendant, Ramsey was an officer of the employer who therefore had knowledge of the discriminatory behavior.

55. The Defendant employer allowed the harassment and retaliation against other female employees who rejected a relationship with the pursuing defendant, Ramsey.

56. Other female employees, not sought after by Ramsey, were not treated in the same manner as the Plaintiff.

57. Other employees not in the same class as the Plaintiff who were working as the employer should have expected were treated well and not constructively discharged.

58. Other employees not in the same class as the Plaintiff who were working as the employer should have expected but who were marked for lay offs were given advance notice by the President and treated in a positive manner.

As a result of the Defendant employer's behavior, Plaintiff has suffered severe emotional, mental and economic damages.

## COUNT V: BY OFFICER OF PHOENIX-MECANO, RICHARD RAMSEY, ON HIS INDIVIDUAL AND OFFICIAL CAPACITY

60   The Plaintiff was discriminated against by the defendant Richard Ramsey when she rebuffed him by telling him that she had a new boyfriend, thus letting him know that she was not interested in dating him.

61   The defendant reacted with hurt and anger and informed Plaintiff that if she did not quit, she would be discharged. This occurred after she had served for more than twelve years of employment with the Phoenix-Mecano as a valued and trusted employee.

The Defendant Ramsey harassed and retaliated against other female employees who rejected his affections.

63. Those employees with whom the defendant Ramsey did not look at for a relationship were not treated in the same manner as the Plaintiff.

65. As a result of the Defendant, Richard Ramsey's intentional and cruel behavior, Plaintiff has suffered severe emotional, mental and economic damages.

WHEREFORE, Plaintiff requests this Honorable Court to grant the following Remedies

A.   Back pay plus interest up to the date of the judgment in this case

B.   Monetary award of $500,000 for emotional distress and pain and suffering in Count I, II, III, IV and V.

C. Award of Attorney Fees and Costs related to these proceedings

D. Award of damages for costs incurred as a result of the Defendants' wrongful actions $200,000

E. Award $200.000 under each Count for consequential damages.

F. Award of Damages for loss of benefits including Health, Dental and Disability and Life Insurance, as well as Retirement Benefits

G. Award of punitive damages of $800,000.

I. Such other and additional remedies as may be just and applicable under this Action.

I AFIRM, UNDER PENALTY OF PERJURY THAT THE STATEMENTS MADE IN THE AFOREGOING COMPLAINT ARE TRUE AND CORRECT TO THE BEST OF MY INFORMATION KNOWLEDGE AND BELIEF

_____    5·17 05
BARBARA ANN KEGLEY

RESPECTFULLY SUBMITTED BY

LAUREL ANCHORS, ESQUIRE
MD BAR #: 14059, MD FED CT #9715
16220 FREDERICK ROAD, SUITE 210-A
GAITHERSBURG, MD 20877
(301) 990-6065